UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAIME ISAI LOCON CORDERO, | ) |
| Petitioner, | ) ) ) |
| v. | ) )  C.A. No. 25-cv-12802-IT |
| PATRICIA HYDE, et al., | ) ) ) |
| Respondents. | ) ) ) |

**MOTION FOR TEMPORARY RESTRAINING ORDER**

**I.     INTRODUCTION**

Petitioner Jaime Isai Locon Cordero ("Mr. Locon Cordero") respectfully moves this Court for a temporary restraining order pending the Court's adjudication of his Petition for a Writ of Habeas Corpus. Mr. Locon Cordero is a father of six. He is lawfully present in the United States after being paroled into the United States and with a pending asylum application. He has never committed any crimes and has no criminal record. He continues to be baselessly detained in penal, inhumane, and punishing circumstances almost a month after an unlawful arrest on September 27, 2025. In that month, the Respondents have still failed to provide Petitioner with any reason for his arrest or any documentation surrounding his arrest. They transferred him to Mississippi in violation of an order of this Court. Mr. Locon Cordero is likely to succeed on the merits. Mr. Locon Cordero is likely to suffer irreparable harm from his unlawful detention, especially as the Respondents attempt to sever his asylum case from his family's and change the venue to Louisiana in an attempt to forum shop despite this Court's Initial Stay of Removal. The balance of equities favors his release, and his release is in the public interest. Petitioner requests the Court to order Respondents to restrain from continuing to detain him during the pendency of his Petition and order his immediate release, or in

1

the alternative return him to Massachusetts during the pendency of these proceedings.

**II.     FACTUAL BACKGROUND**

Mr. Locon Cordero is a citizen of Guatemala who has been living in the U.S. since November 2023. Mr. Locon Cordero, along with his wife Mrs. Trigueros Jimenez de Locon and six children, entered the U.S. after making an appointment via the "CBP One" application, following the government's process for this lawful pathway to be paroled into the United States. His family was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5) for a period of about two years, until November 28, 2025. ECF No. 11-1 Ex. 1.

After receiving parole, the family moved to Massachusetts, the venue for their removal proceedings. *Id.* Ex. 3.  As part of the CBP One program, Mr. Locon Cordero and his family were required to attend these removal proceedings. Mr. Locon Cordero had a hearing scheduled for February 5, 2025, that was cancelled by the Immigration Court. *Id.* Ex. 4. Mr. Locon Cordero is still in removal proceedings and has a pending asylum application before the Immigration Court. *See Id.* Ex. 5. Six months after filing his asylum application, Mr. Locon Cordero applied for a work permit, which was approved by USCIS on June 19, 2025. *See Id.* Ex. 6. Since arriving in the U.S. Mr. Locon Cordero has done nothing to suggest he is a danger or a flight risk. He has never been arrested or been to jail before his present detention. See Declaration of Jaime Isai Locon Cordero (Locon Cordero Decl. ECF. No 10-1 (Exhibit 1 to Petitioner's Reply to Respondent's Memorandum In Opposition to Petition for Writ of Habeas Corpus)) at para 39.

Mr. Locon Cordero, upon information or belief, was arrested without cause on September 27, 2025 by U.S. Immigrations and Customs Enforcement ("ICE") – Enforcement and Removal Operations ("ERO") officers. *See Id.* at 3-7. Mr. Locon Cordero pulled over and was cooperating. Despite his cooperation, he was grabbed and shoved face-first into his vehicle and held there by

masked officers. *Id*. at 3. Without asking his name or information, and after throwing his documents showing his lawful presence in the United States on the ground, he was arrested. *Id*. at 3-4. He asked why he was being arrested multiple times, but was never told, nor did he receive any documentation about his arrest. *Id*. at 6, 11. They drove him around while they arrested other people seemingly at random, before taking him to a bus ICE had hidden waiting until they had arrested enough people to fill it up. *Id*. at 8-10.

Mr. Locon Cordero was then taken to the Burlington ICE Field Office in Burlington, Massachusetts. *Id*. at 10. He was kept in deplorable conditions. He was then transferred to the Batavia Service Processing Center where for nearly a week he was in a freezing, windowless room and had no bed, very limited access to personal hygiene, inadequate food or water, and no outside communication despite repeated requests – particularly stressful for Mr. Locon Cordero as a father of six.

He was then kept up, seemingly for no reason, for over twenty-four hours as Respondent's transferred him to Mississippi where he continues to be held in conditions that are penal, inhumane, and inconsistent with basic standards under the Eighth Amendment of the U.S. Constitution. U.S. Const. amend. VIII.

### III.   PROCEDURAL HISTORY

Upon learning of his detention on Sunday, September 28, 2025, counsel filed and paid for the Petition for Writ of Habeas Corpus while Mr. Locon Cordero was in Massachusetts. The following morning, counsel re-filed the Petition in good faith after learning there had been a technical issue, while still believing Mr. Locon Cordero to be in Massachusetts and being unable to file in any other jurisdiction, as Respondents did not disclose his location nor allow Mr. Locon Cordero to contact anyone. See ECF No 10 (Petitioner's Reply to Respondent's Memorandum In Opposition to Petition

for Writ of Habeas Corpus). On September 29, 2025 at 12:01pm, the Court issued an Order Concerning Service of Petition and Stay of Transfer or Removal. ECF. No. 4.

On October 01, 2025, Respondents filed an answer arguing lack of jurisdiction for the underlying habeas petition and stating that Mr. Locon Cordero was detained in New York. ECF No. 7.

On October 4, 2025, in violation of the order issued by this Court, Respondents moved Mr. Locon Cordero without filing advanced written notice, stating the reasons, or subsequently waiting 72 hours as required. Respondents erroneously informed counsel Mr. Locon Cordero was no longer in New York, prevented communication between counsel and Mr. Locon Cordero, and left his family and counsel without any idea as to his whereabouts for approximately thirty-six hours.

On October 10, 2025, Petitioner's responded to Respondents' answer. On October 14, 2025, Petitioner filed an amended Habeas Petition.

On October 22, 2025, the Department of Homeland Security moved to sever Mr. Locon Cordero's immigration case from that of his family's and change venue to the court assigned to the Adams County Correctional Center in Mississippi, the Lasalle Immigration Court in Louisiana. Department of Homeland Security's Motion to Sever (a true copy of which is attached hereto at *Exhibit 1).* Petitioner filed an opposition on October 23, 2025. Respondent's Opposition to DHS' Unilateral Motion to Sever (a true copy of which is attached hereto at *Exhibit 2*).

To date, the government has not provided any reason for or documentation surrounding his arrest nor the grounds for his ongoing detention.

IV.     **ARGUMENT**

A.     <u>**Standard for Granting a Temporary Restraining Order**</u>

The standards for granting a TRO and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure are identical. *See California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 76 (D. Mass. 2025), *appeal dismissed sub nom. California v. US Dep't of Educ.*, No. 25-1244, 2025 WL 2604596 (1st Cir. Apr. 23, 2025). A party seeking a preliminary injunction "must establish

4

that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When considering whether to grant this "extraordinary remedy, ... courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 24.

Here, Mr. Locon Cordero meets both the irreparable harm and likelihood of success prongs, and the requested relief is not overly burdensome on Respondents. Accordingly, Mr. Locon Cordero merits issuance of a TRO.

**B.     Mr. Locon Cordero Is Likely To Succeed On The Merits Of His Petition**

The "likelihood of success on the merits is considered the most important of the four elements and the '*sine qua non*' of the calculus." *California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 76 (D. Mass. 2025), *citing Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020)." Petitioner's ongoing detention violates Petitioner's Fifth Amendment right to due process and the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6). Petitioner is likely to succeed on the merits of his Petition.

Noncitizens are entitled to due process of law under the Fifth Amendment. *Demore v. Kim*, 538 U.S. 510, 523 (2003). To determine whether civil detention violates a detainee's Fifth Amendment due process rights, courts apply the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See also Doe v. Moniz*, __ F. Supp.3d __, 2025 WL 2576819, at *10 (D. Mass. Sept. 5, 2025) (Talwani, J.). Under *Mathews*, courts weigh the following three factors: (1) "the privacy interest that will be affected by the official action; " (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative

5

burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

**1.      Private interest**

"The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004). *See also Doe,* 2025 WL 2576819, at *10.  Mr. Locon Cordero has a significant private interest in being free from physical detention. When assessing the private interest, courts consider the detainee's conditions of confinement, namely, whether the detainee is held in conditions indistinguishable from criminal incarceration. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (noncitizen detainee held "alongside criminal inmates"); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (same).

Here, Mr. Locon Cordero is being held in conditions that are deplorable. Despite having no criminal record, he is "experiencing all the deprivations of incarceration, including loss of contact with friends and family, loss of income earning … lack of privacy, [and] the lack of freedom of movement." *Günaydin v. Trump,* 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025). Mr. Locon Cordero was held for over twenty-four hours in a holding cell in Burlington, and then for nearly a week in a holding cell at the Batavia Service Processing Center – facilities meant for temporary use.[1] Mr. Locon Cordero was freezing, had no bed, showered once, brushed his teeth twice, had no access to soap, had limited food and water.  *See* Locon Cordero Decl. He saw the sunlight once. *Id*. at 19. The lights were always on, and they had no sense of time. *Id.* He was not permitted to call his family. *Id.*

---

[1] For over a decade, ICE policy limited custody in a "hold room" to 12 hours. U.S. Immigration & Customs Enforcement, Office of Enforcement and Removal Operations, 11087.1: Operations of ERO Holding Facilities 1 (Sept. 22, 2014), available at https://www.ice.gov/doclib/foia/policy/directive11087.1.pdf. The policy states: "[a]bsent exceptional circumstances, no detainee should be housed in a holding facility for longer than 12 hours." *Id.* at 4. On January 31, 2024, the policy was reaffirmed in Directive 11087.2. On June 24, 2025, ICE issued a Memorandum titled "Nationwide Hold Room Waiver," which "provides for a nationwide waiver for [ICE] Enforcement and Removal Operations (ERO) field offices' 12-hour hold room utilization time, as it relates to Directive 11087.2." The waiver allows for individuals who are recently detained or are being transferred to be housed in a "Hold Room" for up to 72 hours, absent exceptional circumstances. *See* Memorandum from Monica S. Burke, Assistant Director for U.S. Immigration and Customs Enforcement Custody Management, Nationwide Hold Room Waiver 2 (June 24, 2025), available at https://perma.cc/KF9Y-AWFA.

at 24. When counsel eventually made contact, they had one thirty-minute meeting before ICE misrepresented his location, cancelled scheduled meetings, and then moved him surreptitiously. *Id.* at 28. He reports ongoing health issues related to temperature, food, and lack of appropriate medical care. *See id.* 34-36. Mr. Locon Cordero also faces lengthy detention whether under 8 U.S.C.§ 1225(b) or 8 U.S.C. § 1226(a). *See Hernandez-Lara v. Lyons*, 10 F. 4th 19, 29-30 (1st Cir. 2021); *Sampiao v. Hyde*, 1:25-cv-11981-JEK (D. Mass. Sept. 9, 2025) at 21.

The first *Mathews* factor plainly supports Mr. Locon Cordero's claim of a Fifth Amendment violation.

### 2. Risk of erroneous deprivation

Under the second *Mathews* factor, courts must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Günaydin*, 784 F. Supp. 3d at 1187. Here, Mr. Locon Cordero has been subject to arbitrary detention. Mr. Locon Cordero's arrest was unlawful, as there was no "reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357. The restraint on his liberty did not exist before his arrest and would not exist but for his unlawful arrest. *Flores Salazar v. Moniz*, 1:25-cv-11159-LTS (D. Mass. June 11, 2025) at 16. Almost a month later, Respondents have yet to assert a basis for Mr. Locon Cordero's detention. Presumably, they would cite to either 8 U.S.C.§ 1225(b) or 8 U.S.C. § 1226(a).

To the extent that Respondents may assert that Mr. Locon Cordero is subject to mandatory detention pursuant to 8 U.S.C.§ 1225(b), Mr. Locon Cordero is not because he is not subject to expedited removal. Insofar as Respondents may argue they "re-detained" him (despite Mr. Locon Cordero never having been detained) pursuant to a revocation of parole, there was no material

change that justified an individualized redetermination or revocation of his parole status, nor had there been any notice to Mr. Locon Cordero that would have indicated said revocation or individualized determination.[2] *Flores Salazar*, 1:25-cv-11159-LTS at 16. Mr. Locon Cordero should also not be subject to detention under 8 U.S.C. § 1226(a) as he is not a flight risk or a danger to the community.

Additionally, the continued detention in Mississippi in violation of the Court's Order has caused the Department of Homeland Security to seek to separate his asylum claim in Mississippi and have his case heard individually in Louisiana. Mr. Locon Cordero is included as a derivative on his wife's application, and his persecution is intertwined with and stems from her persecution. By erroneously separating him legally and physically and making him pursue his immigration claim from detention, any value of the procedural safeguards in immigration court lose weight by separating him from key witnesses, evidence, attorneys, and more. This greatly increases the risk of further deprivation of interest during not only the often lengthy proceedings but also any subsequent appeals when he has a meritorious asylum claim. See Hernandez-Lara, 10 F.4th 19 at 30.

Finally. Mr. Locon Cordero is at high risk of erroneous deprivation of his liberty interest where his detention had no relation to dangerousness or flight risk. *See Doe,* 2025 WL 2576819, at *11. ICE's arrest of Mr. Locon Cordero was not made in conjunction with a criminal arrest or charge, and he has no criminal convictions. ICE apparently happened to be in the area for another reason not related to Mr. Locon Cordero, and either at random or by mistake, arrested Mr. Locon Cordero. Mr. Locon Cordero's detention is unjust and unlawful, and therefore at high risk of being erroneously deprived of his liberty without procedural safeguards.

---

[2] Even a valid revocation of parole would not have made Mr. Locon Cordero unlawfully present per INA 212(a)(9)(B)(ii), as he has a timely filed bona fide application for asylum pending, as evidenced by the C8 work permit he carried at the time of his arrest.

8

### 3. Government Interest

The final *Matthews* factor considers the government's interest and any administrative or financial burdens associated with alternative procedures. *See* 424 U.S. at 335, 96 S.Ct. 893. The government has a valid interest in ensuring appearance at removal proceedings and preventing harms to the community. *See* Hernandez-Lara, 10 F.4th at 32-33. The government has not indicated they believe Mr. Locon Cordero to be a flight risk, but to the extent they may, Mr. Locon Cordero has a strong interest in attending those proceedings and pursing the relief he has available and has never missed an appointment. Petitioner has no criminal record and is not a danger to the community. Additionally, continued detention imposes significant costs on the government. Public interest likewise favors Petitioner, as unnecessary detention "imposes substantial societal costs" as it "'separates families and removes from the community breadwinners, caregivers, parents, siblings and employees.'" Hernandez-Lara, 10 F.4th at 33 (quoting Velasco Lopez v. Decker, 978 F.3d 842, 855 (2d Cir. 2020)). Mr. Locon Cordero is being separated from his wife and children who he provides for, other family, his employer, and the broader community. In addition to the fiscal costs to the community, the state, and the federal government, these "ruptures in the fabric of communal life impact society in intangible ways that are difficult to calculate in dollars and cents." Hernandez-Lara, 10 F.4th at 33.

The government interest in detaining a man with no criminal record, lawfully present in the United States, who followed the government's procedure to enter the United States, has a pending asylum application, and valid work permit, does not outweigh the significant cost to the government as well as the societal cost of separating a hard-working, innocent, loving father from his wife and six children between the ages of three and fifteen who depend on him, his employers, his religious community, and the broader community.

### C. Petitioner Will Suffer Irreparable Harm

In the absence of a TRO, Petitioner is at risk of remaining detained by ICE for months in untenable conditions. Among many hardships, he has already suffered adverse physical and mental impacts due to detention conditions and the separation from his family (exacerbated by the deprivation of any contact whatsoever for over a week). He is missing important milestones in his young children's lives, including his eldest daughter's fifteenth birthday. Mr. Locon Cordero has a history of persecution and trauma, intensifying the impact of detention especially in these inhumane and penal conditions. The harm that Petitioner is suffering each day as a result of ICE's policy of unlawfully subjecting Mr. Locon Cordero to mandatory detention cannot be remediated. *See R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) ("Unlike economic harm, the harm from detention pursuant to an unlawful policy cannot be remediated after the fact."). Mr. Locon Cordero has established that he will suffer irreparable harm by continued detention.

### D. The Balance of Equities and Public Interest Weigh Decidedly In Favor of a Temporary Restraining Order

The balance of equities and public interest merge in cases against the government. *See Nken v. Holder*, 556 U.S. 418, 436 (2009). Here, the balance favors Petitioner. Respondents "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *R.I.L.-R.*, 80 F. Supp.3d at 191. At the same time, the public is served when administrative agencies comply with their obligations. *See TikTok Inc. v. Trump*, 507 F. Supp.3d 92, 115 (D.D.C. 2020).

The potential injury to Petitioner if a restraining order is not issued is profound, while ICE will suffer no harm if it releases Mr. Locon Cordero and allows his immigration process to continue outside of custody. ICE disrupted the status quo by placing Mr. Locon Cordero in detention without cause. Nothing about Petitioner's release from custody would harm

Respondents or interfere with ICE's enforcement of the immigration laws, and his continued detention imposes significant costs on the government. In contrast, Mr. Locon Cordero has a significant interest in freedom from detention.

## V.     CONCLUSION

For all the foregoing reasons, Petitioner Jaime Isai Locon Cordero respectfully requests that the Court grant a TRO requiring Respondents to release Mr. Locon Cordero from custody immediately, or in the alternative, return him to Massachusetts during the pendency of these proceedings.

Dated: October 14, 2025                             Respectfully submitted,
**Jaime Locon Cordero,**

By his attorney,
/s/ Jill Seeber
Jill Seeber, BBO # 689366
Mabel Center for Immigrant Justice
200 Portland Street, 5th Floor
Boston, MA 02114
Tel. 617-835-0880

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: October 14, 2025            /s/ Jill Seeber
                                                      Jill Seeber, BBO # §689366
                                                      Mabel Center for Immigrant Justice
                                                      200 Portland Street, 5th Floor
                                                      Boston, MA 02114
                                                      Tel. 617-835-0880

## **LR 7.1 Certificate**

     I hereby certify that I conferred with Respondents' counsel in an attempt to reach an agreement on the foregoing Motion, but no agreement could be reached.

                                                           /s/ Jill Seeber
                                                       Jill Seeber, BBO # 689366