UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAIME ISAO LOCON CORDERO, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 1:25-cv-12802-IT |
| | * | |
| PATRICIA HYDE, et al., | * | |
| | * | |
| Respondents. | * | |

MEMORANDUM & ORDER

October 31, 2025

TALWANI, D.J.

For the reasons set forth below, Petitioner Jaime Isao Locon Cordero's Amended Petition

for Writ of Habeas Corpus [Doc. No. 11] and Emergency Motion for Temporary Restraining

Order [Doc. No. 12] are GRANTED.

I.      **Background[1]**

A.      *Petitioner's Immigration Status*

Petitioner is a citizen of Guatemala. Am. Pet. ¶ 25 [Doc. No. 11]; Respondents'

Response, Ex. 1 (Chan Decl.) ¶ 6 [Doc. No. 7-1].

In November 2023, Petitioner received humanitarian parole for a period of nearly two

years, expiring on November 28, 2025. Am. Pet. ¶ 25 [Doc. No. 11]; Am. Pet., Ex. 1 [Doc. No.

11-1] (issuing Petitioner a DT class of admission). After receiving parole, Petitioner and his

family moved to Massachusetts. Am. Pet. ¶ 27 [Doc. No. 11]. In Massachusetts, Petitioner filed

---

[1] Petitioner's factual assertions recounted below are either admitted or not rebutted by
Respondents.

his application for asylum and applied for employment authorization. Am. Pet. ¶ 27 [Doc. No. 11]; Am. Pet., Ex. 5 [Doc. No. 11-1]; Am. Pet., Ex. 6 [Doc. No. 11-1]. United States Citizenship and Immigration Services ("USCIS") granted Petitioner's application for employment authorization and issued Petitioner an Employment Authorization Document card. Am. Pet., Ex. 6 [Doc. No. 11-1]. Petitioner's application for asylum is still pending. Am. Pet. ¶ 27 [Doc. No. 11]; Am. Pet., Ex 5 [Doc. No. 11-1].

B.      *Petitioner's Arrest and Detention in Burlington, Massachusetts*

On Saturday, September 27, 2025, Immigration and Customs Enforcement ("ICE") vehicles surrounded the vehicle Petitioner was driving. Am. Pet. ¶ 28; Petitioner's Reply, Ex. A (Locon Cordero Decl.) ¶ 2 [Doc. No. 10-1]. As he was being stopped, Petitioner contacted his brother-in-law and informed him that he was being detained. Locon Cordero Decl. ¶ 2 [Doc. No. 10-1]. ICE officers proceeded to detain him. Am. Pet. ¶ 28; Locon Cordero Decl. ¶ 4 [Doc. No. 10-1]; see also Chan Decl. ¶ 7 [Doc. No. 7-1] (confirming that Petitioner was encountered and detained by ICE Enforcement and Removal Operations officers in Holliston, Massachusetts, on September 27, 2025).

Petitioner asked why he was being arrested but was never told. Am. Pet. ¶ 28; Locon Cordero Decl. ¶ 2 [Doc. No. 10-1]. Neither he nor his counsel have received any papers about his arrest. Am. Pet. ¶ 28 [Doc. No. 11]. Petitioner attempted to inform the ICE officers that he had parole status and that he had his work permit, social security card, and license in his pocket. Locon Cordero Decl. ¶¶ 3–4 [Doc. No. 10-1]. ICE officers declined to review his documents. Id.

Petitioner was taken to the Burlington, Massachusetts ICE field office. Id. ¶ 10–11. Upon arrival, Petitioner requested to call his family. Id. ¶ 12. During the time that Petitioner spent in detention in Massachusetts, Respondents did not give Petitioner the opportunity to call his family or his attorney. Id. Respondents never told Petitioner why he was being detained. Id. ¶ 11.

C.      *Petitioner's Family Contacts Counsel Who Open a Habeas Case*

On Sunday, September 28, 2025, Petitioner's family contacted Petitioner's counsel, informing counsel of his arrest. Petitioner's Reply, Ex. B (Abernethy Aff.) ¶ 5 [Doc. No. 10-2]. Between 2:00 and 3:00 p.m., Petitioner's counsel checked the ICE detainee locator to determine Petitioner's location, but the locator did not provide any record for Petitioner. Id.; see also Petition, Ex. 1, at 2–3 [Doc. No. 1-3] (listing that Petitioner's counsel's search "returned zero (0) matching records" on September 28, 2025 at 2:37 p.m.).

At 4:40 p.m., Petitioner's counsel paid the $5 filing fee and opened a habeas case in this District. Petitioner's Reply, Ex. D (dated payment receipt) [Doc. No. 10-4]; Petitioner's Reply, Ex. E (cm/ecf screenshot) [Doc. No. 10-5] (dated screen shot with computer generated case number for Locon Cordero v. Hyde, et al. 25-cv-12802). Although a case was opened, and counsel attempted to upload the petition, the petition was not electronically docketed. Petitioner's Reply at 5 [Doc. No. 10]. The court's electronic docket shows the case's "date filed" as September 28, 2025.

D.      *Petitioner's Transfer to New York*

That same Sunday evening, Petitioner was transferred to Batavia, New York, on a flight that departed from Bedford, Massachusetts, at approximately 5:00 p.m. and arrived in Buffalo, New York, at approximately 6:30 p.m. Chan Decl. ¶ 8 [Doc. No. 7-1]. Petitioner was not permitted to call his family. Locon Cordero Decl. ¶ 24 [Doc. No. 10-1].

Despite being transferred to Buffalo on September 28, 2025, on September 29, at 9:00 a.m., Petitioner's location still was not being displayed on the ICE detainee locator. Petitioner's Reply, Ex. C (Santiago Decl.) ¶ 4 [Doc. No. 10-3].

E.      *The Petition is Uploaded and the Court Issues a No-Transfer Order*

At about 9:00 a.m. on September 29, the clerk's office advised Petitioner's counsel that "a habeas corpus was filed yesterday and assigned case number 1:25-cv-12802[,]" but that "[t]here are currently no proceedings filed[.]" Petitioner's Reply, Ex. F [Doc. No. 10-6]. Upon receiving this notice, Petitioner's counsel successfully uploaded the <u>Petition for Writ of Habeas Corpus</u> [Doc. No. 1].

At 12:01 p.m., this court issued an Order directing Respondents to not transfer Petitioner "to another district unless the government provides advance notice of the intended move." Order 3 [Doc. No. 4]. The court's order also directed Respondents to answer or otherwise respond to the Petition. <u>Id.</u> at 2.

F.      *Petitioner's Detention in New York and Further Proceedings in this Court*

At around 4:00 p.m. on September 29, nearly twenty-four hours after Petitioner was transferred to Buffalo, Petitioner's counsel saw on the ICE detainee locator that Petitioner was in custody in Buffalo. Santiago Decl. ¶ 4 [Doc. No. 10-3].

On Wednesday, October 1, 2025, Respondents filed their <u>Opposition to Petition</u> [Doc. No. 7]. Respondents opposed the Petition on the ground that ICE had transferred Petitioner to the Buffalo Federal Detention Center in Buffalo, New York, before the Petition was docketed on September 29, 2025, purportedly "to account for bed space constraints," <u>see</u> Chan Decl. ¶ 9 [Doc. No. 7-1], and the court therefore lacked jurisdiction. Respondents' Opp'n at 2 [Doc. No. 7]. Respondents stated further that Respondents had not violated the court's no transfer order where Petitioner was transferred to Buffalo New York prior to that order entering and "Petitioner remains in ICE custody at this facility." <u>Opp'n</u> to Petition 2 [Doc. No. 7] (citing Chan Decl. ¶ 5). The Opposition did not address the basis for Petitioner's detention.

Despite the "bed space" rationale for the move, while Petitioner was detained in Buffalo, he was never given a bed to sleep in. Am. Pet. ¶ 7 [Doc. No. 11]. Instead, Petitioner was provided with a blanket and detained along with other individuals in a cement room without beds. Locon Cordero Decl. ¶¶ 18–19.

On Thursday, October 2, 2025, Petitioner's counsel was first able to speak to Petitioner. Abernethy Aff. ¶¶ 7, 9–10 [Doc. No. 10-2]. Petitioner's counsel also scheduled appointments to confer with Petitioner on Friday, October 3, and Monday, October 6. Id. ¶ 9. However, on Friday, October 3, Petitioner's counsel received two notices from the Detention Facility Appointment Scheduler cancelling counsel's appointments with Petitioner, claiming that the "individual [was] no longer in the facility." Id. ¶ 11 [Doc. No. 10-7]; Petitioner's Reply, Ex. G [Doc. No. 10-7]. Petitioner, however, was still in Buffalo on October 3. Locon Cordero Decl. ¶¶ 28-29; Abernethy Aff. [Doc. No. 10-2] ¶ 16; Petitioner's Reply, Ex. H (ICE detainee locator) [Doc. No. 10-8].

At around 2:00 a.m. Saturday, October 4, 2025, having now been detained in Buffalo for nearly a week, ICE proceeded to transfer Petitioner again. Locon Cordero Decl. ¶ 29 [Doc. No. 10-1]. ICE did not tell Petitioner where he was being taken when his flight departed from Buffalo. Id.

G.    *Petitioner's Detention in Louisiana and Mississippi*

Petitioner's flight landed in Louisiana. Id. ¶ 30. From Louisiana, Petitioner was transferred to Mississippi and arrived at the Adams County Correctional Facility on or about 9:00 p.m. Id.; Abernethy Aff. ¶ 12 [Doc. No. 10-2]. At no point, from when Petitioner left Buffalo through the present, have Respondents provided this court with notice of this transfer.

Early on Sunday, October 5, 2025, after arriving at the Mississippi facility, Petitioner was able to briefly speak with his wife for the first time since he was detained. Locon Cordero Decl. ¶ 32 [Doc. No. 10-1].

H.       *Further Proceedings in this Court*

On October 10, 2025, Petitioner filed a Reply to Respondents' Opposition [Doc. No. 10] with exhibits. In response to Respondents' contention that the court lacked jurisdiction, Petitioner's counsel explained that a case had been opened and the filing fee paid on Sunday, September 28, 2025, and that in any event, where Respondents did not allow Petitioner to make a phone call and did not post his location, counsel had no method to determine his location or custodian until later in the afternoon on September 29, 2025. Id. at 2–4.

On October 14, Petitioner filed his Amended Habeas Petition [Doc. No. 11] with this court.

On October 22, 2025, the Department of Homeland Security moved to sever Petitioner's immigration case from his family's case pending before the Chelmsford Immigration Court. Mot. for TRO, Ex. 1 at 2 [Doc. No. 12-1].

On October 24, 2025, Petitioner filed an Emergency Motion for Temporary Restraining Order [Doc. No. 12] asking this court to order Respondents to restrain from detaining him during the pendency of this Petition and order his immediate release, or in the alternative return him to Massachusetts during the pendency of these proceedings. Id. at 1-2.

On October 27, the court directed Respondents to file a response to Petitioner's Amended Petition [Doc. No. 11], Emergency Motion for a Temporary Restraining Order [Doc. No. 12], and Reply to Respondents' Opposition [Doc. No. 10]. See Elec. Order 1 [Doc. No. 13]. In response, on October 28, Respondents filed an Opposition to the Amended Petition [Doc. No. 14] that only reiterated their jurisdictional argument. Respondents did not address the factual

allegations in the amended petition and still provided no basis for Petitioner's detention.

Respondents filed no response to the Motion for a Temporary Restraining Order [Doc. No. 12]

beyond the jurisdictional argument. Respondents again contended that the court "should transfer

the Petition to the Western District of New York[,]" where Petitioner was in ICE custody at the

time the action was filed. Respondents' Opp'n to Am. Pet. at 4 [Doc. No. 14]; see also id. at 1

(setting forth Respondents' "non-opposition to transfer of this Petition to the Western District of

New York pursuant to 28 U.S.C. §§ 1404(a), 1406, 1631."); id. at 13 (asserting that "Petitioner

can certainly seek relief for his allegedly unlawful arrest and detention in the Western District of

New York and therefore Petitioner would not be prejudiced by such transfer.").

## II.    Discussion

### A.  Jurisdiction

"Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody

within the United States, he should name his warden as respondent and file the petition in the

district of confinement." Rumsfeld v. Padilla, 542 U.S. 426, 428 (2004); Ozturk v. Hyde, 136

F.4th 382, 390 (2d Cir. 2025) ("We begin with two traditional requirements for a federal court to

entertain a habeas petition: that the petition be filed in the district of confinement and that it

name the petitioner's immediate custodian.").

As to the first requirement, "[t]he federal habeas statute straightforwardly provides that

the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'"

Padilla, 542 U.S. at 434 (citing 28 U.S.C. § 2242).

With respect to district of confinement requirement, "[t]he court issuing the writ must

have personal jurisdiction over the person who holds the petitioner in custody." Vasquez v.

Reno, 233 F.3d 688, 690 (1st Cir. 2000); Padilla, 542 U.S. at 442. "In habeas challenges to

present physical confinement . . . the district of confinement is synonymous with the district

court that has territorial jurisdiction over the proper respondent." <u>Padilla</u>, 542 U.S. at 444. This is because in such challenges the immediate custodian rule applies, and "[b]y definition, the immediate custodian and the prisoner reside in the same district." <u>Id.</u>

The parties dispute whether the Petition should be heard in the District of Massachusetts or in the Western District of New York. Respondents contend that "Petitioner was not detained in Massachusetts when he filed this action" on September 29 and that the court therefore does not have jurisdiction. Respondents' Opp'n at 4 [Doc. No. 7]. Petitioner argues that the court should instead find that the Petition was filed on September 28, 2025, when Petitioner was still in Massachusetts. Petitioner's Reply at 5 [Doc. No. 11]. Thus, for the court to determine whether it has jurisdiction in this case, it must first determine when the Petition was filed.

Whether opening a case and paying the filing fee is sufficient for jurisdiction to attach to a petitioner's habeas proceeding is a novel question. And despite the court's efforts to obtain a response from Respondents, <u>see</u> Elec. Order [Doc. No. 13], Respondents failed to address Petitioner's arguments regarding the September 28 filings. As such, any objection to this argument is waived.

The court finds that jurisdiction attached in this District when Petitioner opened a case file with this court on September 28. At that time, he appropriately notified the court that he was filing a habeas petition, identified his custodian, and paid the required fees to file his Petition. The court issued a case number and gave the case file a September 28 case opening date. A technical error or an error by counsel then prevented the uploading of the Petition. Respondents do not refer to these circumstances or Petitioner's arguments at all. Where Respondent has not addressed Petitioner's claims, the court finds that this delay in uploading does not foreclose a finding that a habeas case was filed in this District on September 28 at 4:40 p.m.

On September 28, Petitioner was still being detained in Massachusetts. The Petition is properly directed to Petitioner's immediate custodian at that time, and it was filed in Petitioner's district of confinement despite Respondents' secrecy as to Petitioner's location. Therefore, this court has jurisdiction over this matter.

### B. Emergency Motion for a Temporary Restraining Order

Petitioner's Emergency Motion for Temporary Restraining Order [Doc. No. 12] asks that the court "order Respondents to restrain from continuing to detain him during the pendency of his Petition and order his immediate release, or in the alternative return him to Massachusetts during the pendency of these proceedings." Id. at 1–2. Petitioner notes that he is lawfully present in the United States after being paroled into the United States and has a pending asylum application, and that in the month since he has been detained, Respondents still have failed to provide him with any reason for his arrest or any documentation surrounding his arrest. Id. at 1. He asserts that his work permit was approved by USCIS on June 19, 2025, Am. Pet., Ex. 6 [Doc. No. 11-1], and that he has never been arrested or been to jail before his present detention. Locon Cordero Decl. ¶ 39. Petitioner argues that he is entitled to the requested relief because of the likelihood of success on the merits of the claim, the irreparable harm he is suffering by his unlawful detention, and that the balance of equities and public interest weigh decidedly in favor of the temporary restraining order. Mot. for TRO 1 [Doc. No. 12].

As discussed below, there is a high likelihood of success on the merits of his petition. In addition, where Respondents previously assured the court that Petitioner "remains" in Buffalo while the jurisdictional issues were being resolved but nonetheless transferred him, without notice to counsel or the court, to Mississippi, there is a risk that Petitioner will be transferred further if not brought back to Massachusetts. See Respondents' Opp'n at 2. Finally, Respondents have not opposed the request for a TRO (except as to jurisdiction) despite this court's request for

a response. Accordingly, the court finds appropriate the alternative relief requested by the

Petitioner, namely, an order returning Petitioner to the District of Massachusetts.

      C.  Merits of the Petition

      As to the merits of Petitioner's Amended Petition, the court finds that the reasoning in

Doe v. Moniz, __ F. Supp. 3d __, 2025 WL 2576819 (D. Mass. Sept. 5, 2025), and in similar

cases in this district and in other districts, and in this court's recent decision in Elias Escobar v.

Hyde, et al., 2025 WL 2823324 (D. Mass. Oct. 3, 2025), applies with equal or greater force

where Respondents have to date provided no grounds for Petitioner's detention.[2]

      As this court noted in Doe, "[w]hereas Section 1225(b) authorizes the Government to

detain certain aliens seeking admission into the country, Section 1226 authorizes the

Government to detain certain aliens already in the country pending the outcome of removal

proceedings." Id. at *5  (citation modified) (citing Gomes v. Hyde, 2025 WL 1869299, at *2 (D.

Mass. July 7, 2025); see also Jennings v. Rodriguez, 583 U.S. 281, 289 (2018)). Here, "there is

no dispute that [Petitioner] had been residing in the United States for some time" when

Respondents detained Petitioner. Doe, 2025 WL 2576819 at *5. Consequently, "Section 1225

does not apply to Petitioner." Id.

      The Board of Immigration Appeals' decision in Matter of Yajure Hurtado, 29 I&N Dec.

216 (BIA 2025), is unpersuasive and does not change the analysis. See Elias Escobar, 2025 WL

2823324, at *3 (citing cases reaching the same conclusion).

---

[2] In their response to Petitioner's Amended Petition [Doc. No. 11], Respondents request "an
opportunity to respond to the merits of the Amended Petition[,]" should the court find that it has
jurisdiction. Respondents' Response Opp'n to Am. Pet. 3 [Doc. No. 14]. Yet, the court already
directed Respondents to respond to the Amended Petition [Doc. No. 11], as well as to
Petitioner's Motion for a Temporary Restraining Order [Doc. No. 12], in the court's October 27
Order. Respondents did not do so.

III.    **Conclusion**

Accordingly, Petitioner's <u>Emergency Motion for Temporary Restraining Order</u> [Doc. No. 12] and <u>Amended Petition for Writ of Habeas Corpus</u> [Doc. No. 11] are GRANTED.

Respondents shall return Petitioner to the District of Massachusetts within 72 hours of the court's issuance of this Order. Upon Petitioner's arrival to Massachusetts, Respondents shall release Petitioner from custody or, in the alternative, no later than November 7, 2025, Petitioner Locon Cordero must be provided a bond hearing pursuant to 8 U.S.C. § 1226. If the immigration judge declines to conduct a bond hearing based on <u>Matter of Yajure Hurtado</u>, 29 I&N Dec. 216 (BIA 2025), Respondent shall so advise the court so that this court may conduct the bond hearing. Any decision by the immigration judge to retain Locon Cordero in custody following a bond hearing pursuant to 8 U.S.C. § 1226 shall set forth the reasons for the continued detention.

IT IS SO ORDERED.

October 31, 2025                                  /s/ Indira Talwani

                                                           United States District Judge